UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| LESTER LYLES, husband of, and<br>MINA LYLES | * | CASE NO. |
|     Plaintiffs | * | |
| | * | |
| versus | | |
| | * | |
| NCL (BAHAMAS) LTD,<br>A BERMUDA COMPANY d/b/a<br>NORWEGIAN CRUISE LINE | * | |
|     Defendant | * | |

## COMPLAINT

COMES NOW, the Complainants, LESTER LYLES, husband of, and MINA LYLES, by and through undersigned counsel, and sues the Defendant, NCL (BAHAMAS) LTD., A BERMUDA COMPANY d/b/a NORWEGIAN CRUISE LINE (hereinafter referred to as NCL), and further states as follows:

## JURISDICTION, VENUE AND PARTIES

1. Complainant, LESTER LYLES, is a person of the full age of majority and is a citizen and resident of the State of Virginia.

2. Complainant, MINA LYLES, is a person of the full age of majority and is a citizen and resident of the State of Virginia.

3. Defendant, NCL (BAHAMAS) LTD. (hereafter "NCL") is a foreign corporation incorporated in Bermuda.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332 and involves diversity of citizenship under 28 U.S.C. §1332. Alternatively, in the

event this matter does not come under the Diversity Jurisdiction of the Court, then this matter is being brought under the Admiralty and Maritime Jurisdiction of the Court pursuant to 28 U.S.C. §1333.

5. At all times pertinent hereto, Defendant, NCL, conducted ongoing and substantial business activities in the Southern District of Florida, so that *in personam* jurisdiction exists in the United States District Court for the Southern District of Florida.

6. At all times pertinent hereto, Defendant, NCL, engaged in the business of operating maritime cruise vessels for paying passengers in the waters of the State of Florida.

7. Defendant, NCL, is a common carrier under the law.

8. Defendant, NCL, is subject to the jurisdiction of this Court.

9. Venue is also proper in this federal judicial district because Defendant's principal place of business is located within this district.

## GENERAL ALLEGATIONS

10. At all times material herein, Defendant, NCL, owned, operated, managed, maintained and/or controlled the vessel, *Norwegian Prima*.

11. At all times material herein, Defendant, NCL, had exclusive custody and control of the vessel, *Norwegian Prima*.

12. On August 17, 2023, Lester Lyles set sail as a fare-paying passenger aboard the Defendant's vessel, *Norwegian Prima,* from Reykjavik, Iceland for a ten (10) day cruise. The vessel returned to Southampton, England on August 27, 2023.

13. During the cruise, Mr. Lyles made use of the various amenities of the vessel, including its water system in showering, bathing and being in close proximity to the vessel's swimming pool, hot tubs and his cabin's private hot tub. He also used a humidifier filled with water from the

vessel's water system.

14. Mr. Lyles's cabin was located in a section of the vessel called the Haven. His cabin had a private hot tub that was filled with water by an NCL employee at the beginning of the cruise. Mr. Lyles had no knowledge of and no control as to how the hot tub was filled or whether it was cleaned and disinfected. To his knowledge, the hot tub was not serviced, cleaned or disinfected during his time on the cruise.

15. Shortly after returning home from the cruise, Mr. Lyles began to feel sick. He was admitted to a local hospital with fever, dyspnea, cough, and generalized weakness. During his hospitalization, Mr. Lyles was diagnosed with Legionnaires Disease. He suffered from severe sepsis and acute hypoxia. He was placed in an intensive care unit, intubated and treated for Legionnaires Disease. He continues to suffer from the effects of that disease.

16. According to the U. S. Department of Health and Human Services, Centers for Disease Control and Prevention, Legionnaires Disease is a very severe type of pneumonia that is caused by inhalation of *Legionella* bacteria from a water source. *Legionella* is found in warm water, particularly improperly maintained hot tubs, water systems, air conditioning cooling towers, stagnant water, spas, pools, and potable water sources that are not adequately cleaned and disinfected. A person can become infected with *Legionella* when they breathe in steam or mist from a contaminated hot tub, swimming pool or water system.

17. According to the Centers for Disease Control and Prevention, the incubation period for the *Legionella* bacteria to become symptomatic in a person is from two to fourteen days after exposure to the water source. Lester Lyles because symptomatic within that time frame of his exposure to the water sources on Defendant's vessel. It is more probable than not that Mr. Lyles contracted Legionnaires Disease while on Defendant's vessel.

18. Mr. Lyles's Legionnaires Disease case was reported to the Centers for Disease Control and Prevention and the Virginia Department of Health.

19. The danger of the *Legionella* bacteria accumulating and growing in the water system of the vessel, *Norwegian Prima*, was well known to Defendant, NCL, before Mr. Lyles's cruise of August 17, 2023.

20. On February 17, 2023, Defendant, NCL, sent a letter to past guests on the *Norwegian Prima* stating that two guests who sailed on that vessel on the November 19, 2022 cruise had been diagnosed with Legionnaires Disease. This letter was not just limited to guests of that one cruise. The letter was sent to guests who had sailed aboard that vessel on four (4) subsequent cruises with departure dates of January 22, 2023, January 29, 2023, February 5, 2023 and February 12, 2023. The letter stated that the Defendant was working with the Centers for Disease Control and Prevention (CDC) to support the CDC's investigation. By this letter, Defendant admitted that it had actual notice and knowledge of claims of Legionnaires Disease aboard the *Norwegian Prima* for many months before Mr. Lyles's August 17, 2023 cruise. A copy of this letter is attached as Exhibit 1 to this Complaint.

21. Four (4) days after Mr. Lyles's cruise ended, Defendant, NCL, closed all hot tubs on the decks of the Haven, where Mr. Lyles had stayed. In a letter dated August 31, 2023 to guests who had booked Haven cabins, Defendant, NCL, stated that the hot tubs were "temporarily out of service due to required maintenance." A copy of this letter is attached as Exhibit 2 to this Complaint.

22. Upon information and belief, the Haven hot tubs were actually closed by mandate of the Centers for Disease Control and Prevention (CDC).

23. The Haven hot tubs on the *Norwegian Prima* remained closed for at least one month. On

September 27, 2023, Defendant, NCL, sent a letter to guests who had booked Haven cabins stating that "a few guests who sailed aboard a previous *Norwegian Prima* sailing were diagnosed with Legionnaires' Disease following their travels." The letter continued: "Out of an abundance of caution, due to the Legionnaires association with the vessel, all in-stateroom hot tubs were taken out of service as of August 31 while the investigation is ongoing." A copy of this letter is attached as Exhibit 3 to this Complaint.

24. Subsequent to Mr. Lyles contracting Legionnaires Disease, Defendant, NCL, implemented, at the direction of the CDC, a new sanitation process for all in-stateroom hot tubs. Due to new sanitation protocols, the whirlpools must be individually prepared for use, and will only be usable for approximately one hour. After each use, they must be promptly drained and re-sanitized.

25. The Centers for Disease Control and Prevention (CDC) documented multiple cases wherein individuals who had been exposed to the vessel's water supply were diagnosed with Legionnaires Disease, before Mr. Lyles' cruise.

26. The CDC determined that there was an outbreak or cluster of Legionnaires Disease cases aboard the *Norwegian Prima.* In November 2023, the CDC advised the Virginia Department of Health that the CDC was preparing a MMWR outbreak report (Morbidity and Mortality Weekly Report) for the cruise investigation of the *Norwegian Prima*. The CDC stated that "one of the cases as part of the cruise outbreak/cluster" was Mr. Lyles's case.

27. As a result of this outbreak or cluster on board the *Norwegian Prima*, the CDC required NCL to produce records and responses to the CDC of the results of recent *Legionella* testing that had been conducted on board the vessel, measures taken in response to any positive results, medical logs of crew and passengers, in particular documented cases of lower respiratory illness that might be pneumonia, clinically diagnosed or chest x-ray confirmed pneumonia, and anyone

Rosenfeld Law Group, PLLC – Offices in Miami-Dade and Broward – (833) Mishaps
Hollywood Location: 4866 Sheridan St., Room 1, Hollywood, FL 33021 – (754) 764-1400

5

who received a *Legionella* urinary antigen test. The CDC also required NCL to produce and describe its Water Management Program (WMP).

28. Considering the CDC-documented prior cases of Legionnaires Disease aboard the *Norwegian Prima*, Defendant, NCL, knew, or should have known, of the dangerous level of *Legionella* bacteria in its water system before Lester Lyles was a passenger aboard Defendant's vessel.

29. Before Lester Lyles's cruise of August 17, 2023, Defendant, NCL, voluntarily agreed to implement and be bound by the provisions, regulations, rules and terms of the Vessel Sanitation Program (VSP).

30. The Vessel Sanitation Program (VSP) at the Centers for Disease Control and Prevention (CDC) mandates the cruise ship industry to prevent and control the growth, transmission and spread of the *Legionella* bacteria in a vessel's water system.

31. The Vessel Sanitation Program (VSP) operates by the public health standards that can be found in the "Vessel Sanitation Program Operating Manual" which criteria targets the control and prevention of growth of the *Legionella* bacteria on cruise ships, including the *Norwegian Prima*.

32. Defendant, NCL and the *Norwegian Prima* maintains a clinical surveillance protocol known as the ship's "Clinical Algorithm for Respiratory Illness" which alerts, notifies and diagnoses pneumonia and Legionnaires Disease of crewmembers and passengers that sail on the ship.

33. Prior to Mr. Lyles' cruise NCL's "Clinical Algorithm for Respiratory Illness" established actual knowledge or constructive knowledge of the dangerous condition of legionella aboard the *Norwegian Prima*.

34. While a passenger aboard Defendant's vessel, Lester Lyles was exposed to and breathed

in, inhaled or consumed *Legionella*-contaminated water causing him to contract Legionnaires Disease.

35. The source of the *Legionella*-contaminated water was the water system of Defendant's vessel, *Norwegian Prima*.

36. Legionnaires Disease is not a communicable disease and cannot be transmitted person-to-person.

37. The *Legionella* bacteria is not a pollutant.

38. The water on the *Norwegian Prima* was a good or product intended for bodily consumption.

39. The water on the *Norwegian Prima* was a good or product intended for human ingestion.

40. The *Legionella* bacteria which Lester Lyles was exposed to was on, or was contained in, the water on the *Norwegian Prima*.

41. At all times relevant hereto, Defendant, NCL, acted through its agents, servants, employees and/or ostensible agents, and those individuals whom NCL held out to the public and to Lester Lyles to be agents, servants, employees and/or ostensible agents.

42. Defendant, NCL, was responsible for the maintenance, inspection and repair of the water supply on the *Norwegian Prima*.

43. The water supply on Defendant's vessel was neither safe nor clean as it was contaminated with the *Legionella* bacteria.

44. The water on Defendant's vessel is a good and product intended for bodily consumption, as it is utilized in the satisfaction of desires and wants relating to the body.

## COUNT 1 - NEGLIGENCE

45. Plaintiff realleges, adopts and incorporates by reference the allegations in Paragraphs 10

through 44.

46. At all times material herein, Defendant, NCL, owed Lester Lyles and all other passengers a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959); *Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355 (11th Cir. 1990).

47. Defendant, NCL, owed a duty to Lester Lyles and all other passengers, to exercise reasonable and ordinary care in maintaining the water supply of the *Norwegian Prima* in a safe and suitable condition.

48. Defendant, NCL, owed a duty to Lester Lyles and all other passengers to warn them of the dangerous condition of its vessel's *Legionella*-contaminated water supply, which NCL knew, or should have known, about because of the prior CDC-documented Legionnaires Disease cases aboard the *Norwegian Prima*.

49. Defendant, NCL, owed a duty to Lester Lyles and its passengers to exercise reasonable and ordinary care to comply with the Vessel Sanitation Program in order to insure the health and safety of its passengers in their use of the vessel's water system.

50. Defendant, NCL's, duties are intended to protect its passengers, including Lester Lyles from this type of harm arising in this manner.

51. Defendant, NCL's, conduct and omissions in allowing *Legionella* bacteria to colonize, amplify and disseminate in its water supply on the *Norwegian Prima* was a cause-in-fact of Lester Lyles contracting Legionnaires Disease.

52. Defendant, NCL, breached its duty to provide Lester Lyles with reasonable care under the circumstances, including by not maintaining its water supply in a safe and reasonable condition for its passengers, resulting in Lester Lyles actually and proximately contracting Legionnaires

Disease.

53. Defendant, NCL, breached its duty to provide Lester Lyles with reasonable care under the circumstances by failing to warn him of the unsafe and dangerous condition of the water supply on the *Norwegian Prima*.

54. Defendant had actual notice of the unsafe condition of the water supply of the *Norwegian Prima*.

55. Alternatively, the unsafe condition of the *Norwegian Prima's* water supply existed long enough and with sufficient regularity to make it Defendant, NCL's, duty to have discovered it in the exercise of ordinary care.

56. Alternatively, Defendant, NCL, created the dangerous and unsafe condition of the *Norwegian Prima's* water supply through its own conduct. As such, Defendant, NCL, is charged with and imputed with knowledge of the unsafe condition.

57. Defendant, NCL, had actual or constructive knowledge of the dangerous level of *Legionella* bacteria in the *Norwegian Prima's* water supply as evidenced by the CDC-documented Legionnaire Disease cases before Mr. Lyles' cruise.

58. The danger of the presence of the *Legionella* bacteria in the water supply of the vessel, *Norwegian Prima*, was not open or obvious such that Lester Lyles was, or could be, aware of it.

59. Lester Lyles was not guilty of any act or omission which caused or contributed to his damages herein, but rather his resulting damages were proximately caused by the negligence of Defendant, NCL, including, but not limited to, the following particulars:

    a. Failing to properly maintain its vessel's hot tubs, water supply which allowed *Legionella* bacteria to develop and flourish;

    b. Failing to properly clean and disinfect its vessel's hot tubs, water supply and water

tanks which allowed *Legionella* bacteria to develop and flourish;

c. Failing to test, or properly test, the water in its vessel's hot tubs, water supply and water tanks which allowed *Legionella* bacteria to develop and flourish;

d. Failing to inspect, or have inspected, the water and the water tanks in its vessel's hot tubs and water supply which allowed *Legionella* bacteria to develop and flourish;

e. Failing to detect or discover that the *Legionella* bacteria had developed and flourished in its vessel's hot tubs, water supply and its water tanks;

f. Failing to warn passengers, including Lester Lyles, of the danger in using its vessel's hot tubs and water supply which contained and exposed passengers to the *Legionella* bacteria.

g. Failing to follow the Centers for Disease Control and Prevention guidelines and/or regulations to prevent *Legionella* from developing and flourishing in its vessel's water supply;

h. Failing to have, or failing to properly implement, a Water Management Program for its vessel's water systems and all devices that use water;

i. Failing to comply with the Vessel Sanitation Program (VSP);

j. Failing to act as a reasonable and prudent person would under the same or similar circumstances;

60. As a direct and proximate result of the negligence of Defendant, NCL, Lester Lyles suffered bodily injury, physical pain and suffering, mental anguish, loss of enjoyment of life, disability, and incurred medical expenses and financial loss, and any other damages allowed by law.

61. At all times pertinent hereto, Mina Lyles was the lawful wife of Lester Lyles and is entitled to recover damages for loss of consortium for the injuries to her spouse caused by the Defendant.

62. Plaintiff asserts that the doctrine of *res ipsa loquitur* as recognized by the State of Florida and the General Maritime Law applies to this case in that the Defendant's negligence is presumed because the Defendant had exclusive control of the contaminated water aboard its vessel which is undoubtedly what caused the injury to Lester Lyles.

63. Plaintiff requests and is entitled to a trial by jury.

**WHEREFORE**, Complainants, LESTER LYLES and MINA LYLES, demand judgment against Defendant, NCL (Bahamas) LTD., d/b/a NORWEGIAN CRUISE LINES, INC. for damages, costs, prejudgment interest, and post-judgment interest, together with such other and further relief this Court deems equitable and just.

DATED this 14th day of August 2024.

Rosenfeld Law Group, PLLC
66 W. Flagler St. Suite 900 - #1284
Miami, FL 33130
Toll Free: 833.MISHAPS
Telephone: 786.668.3608
Fax: 786.384.7394
Attorneys for Plaintiffs

By: /s/ *Nicholas Battaglia*
Nicholas Battaglia, Esq.
Florida Bar No. 1018467
Email: Nbattaglia@therosenfeldlawgroup.com

**PLEASE SERVE:**
NCL (Bahamas) LTD., A Bermuda Company,
d/b/a NORWEGIAN CRUISE LINES, INC.
c/o Registered Agent
Daniel S Farkas, Esq.
7665 Corporate Center Drive
Miami FL 33126